HARRIS, C.M., Associate Judge.
In 1959 B. Miles Hammond executed his will containing the following provision:
All stock certificates belonging to my dear Mother and to me as set forth in paragraphs seven and eight, supra, I bequeath in trust to the Anderson, South Carolina chapter of the United Daughters of the Confederacy with the expressed wish that the proceeds (dividends) therefrom be used for the support and relief of Southern born women of gentle birth in need preferably those descended from Confederate veterans and with the proviso that the entire proceeds be turned over during her life time to my dear Aunt-in-Law, Mrs. J. Furman Evans, Watson Avenue, Anderson, South Carolina for her use and support she being a gentle Southern lady loyal to the South.
The relevant provisions of Paragraphs 7 and 8 state:
In the aforesaid top drawer of the filing cabinet are certificates of stock in my and my Mother’s names valued respectively at about $33,000 and $35,000 as of March 5, 1956. Appriximately [sic] $15,-000 in stock certificates were given to me by my dear Mother about four years before her death on March 5, 1956 and are endorsed for that purpose upon the back of each by her to assist me in my business affairs.
* * * * * *
In the third drawer are a pale blue backed 3-ringed note book detailing all stocks held by my Mother, Mrs. Virginia E. Hammond, and by me_ Previous bank statements by years for my Mothe-rand [sic] for me are in a carboard [sic] box on the shelf above the filing cabinet, andit [sic] contains a duplicate list and valuation of her and my stocks, her’s [sic] as of March 5, 1956 and separately as of March 5, 1957 as taken from the Wall Street Journal and mine, I believe, as of March 5, 1956. One stock certificate of the American Telephone and Telegraph Company representing, I believe, 6 shares cannot be found and in the “Broker” files in the top drawer relative- *1034 to [sic] my Mother’s missplacd [sic] stock is correspondence with forms and instructions relative to replacement. Also I have hypothecated with the First National Bank of Gainesville as security for a loan of $3900.00 (as detailed in documents in the folder containing deeds tied with a string in the top drawer) about 30 shares of American Telephone and Telegraph Company stock on a 90 day note renewable and payable in advance at 5½ per cent amounting to $53.63.
At the time he executed his will, testator owned approximately $90,000 in stock; at the time of his death in 1986, he owned approximately $900,000 in stock.[1]
The question before this court is how much of the stock passes under the provision of his will.
Appellees argue, as the trial court found, that since the gift of stock is a “specific devise," the beneficiary is limited to the stock belonging to the decedent at the time the will was executed and remaining in his ownership at the time of his death.
In reaching this decision the trial court relied on the “rule of construction” contained in section 732.6005, Florida Statutes (1985).
It appears that before resorting to a “rule of construction” the court should first determine if the intention of the testator is otherwise determinable from the will. Giving effect to the testator’s intent is the guiding principle in the construction of a will.[2]
Neither lack of testamentary capacity nor undue influence is an issue in this case.
It is clear that Mr. Hammond had no lineal ascendants or descendants. It is without dispute that although he was aware of distant relatives (and he made modest bequests to some of them), practically all of his estate was left to charity.
It is also clear from his will, that Mr. Hammond held both the Confederacy and the beneficiary herein, the United Daughters of the Confederacy of Anderson, South Carolina, in very high esteem.
Mr. Hammond left “all stock certificates belonging to” him to the named beneficiary. The fact that he went on in different paragraphs to describe the stock certificates and to assist in locating them does not detract from his clear testamentary plan — to give his property to charity, and in particular, to give his stock to the United Daughters of the Confederacy.
The Order Construing Will is reversed with instructions to amend said order consistent with this opinion.
REVERSED.
UPCHURCH, C.J., and SHARP, J., concur.

. The decedent’s estate exceeds $3,000,000. This is the only provision involved in this appeal.

. § 732.6005, FIa.Stat. (1985).